Magistrate Judge S. Kate Vaughan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ORBIN HERNANDEZ-VELASQUEZ<br><br>Defendant(s). | CASE NO. MJ25-801<br><br>COMPLAINT for VIOLATION<br><br>Title 21, U.S.C. 841(a)(1), 841(b)(1)(A), and 846. |

BEFORE, S. Kate Vaughan, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT ONE

**(Possession of Controlled Substances with Intent to Distribute – Honda CRV)**

On or about August 26, 2025, in King County, within the Western District of Washington, ORBIN HERNANDEZ-VELASQUEZ did knowingly and intentionally possess with the intent to distribute, controlled substances, including: cocaine, N-phenyl-

Complaint - 1
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), and methamphetamine, substances controlled under Title 21, United States Code.

It is further alleged that that the offense involved 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(b)(1)(A).

It is further alleged that the offense involved 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or a fentanyl-related substance, in violation of Title 21, United States Code, Sections 841(b)(1)(A).

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

### COUNT TWO

**(Possession of Controlled Substances with Intent to Distribute – Lexus RX)**

On or about August 26, 2025, in King County, within the Western District of Washington, ORBIN HERNANDEZ-VELASQUEZ did knowingly and intentionally possess with the intent to distribute, controlled substances, including: cocaine, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), and methamphetamine, substances controlled under Title 21, United States Code.

It is further alleged that the offense involved 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(B).

Complaint - 2
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is further alleged that the offense involved 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or a fentanyl-related substance, in violation of Title 21, United States Code, Sections 841(b)(1)(A).

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B).

And the complainant states that this Complaint is based on the following information:

I, Homeland Security Investigations Special Agent Igor Leao, being first duly sworn on oath, depose and say:

## I.    INTRODUCTION

1.    I, Igor Leao, have been a Special Agent for Homeland Security Investigations (HSI) since 2023. I was trained at the Federal Law Enforcement Training Center for approximately six months, and I was certified by the Criminal Investigation Training Program and the Homeland Security Investigation Special Agent Training Program to be a Special Agent. As a Special Agent, I investigate crimes against the United States, with a specialty in crimes committed involving a transnational nexus. As an HSI Special Agent I was also trained to conduct investigations relating to violations of Title 8 (Immigration Law) and Title 19 (Customs Law) of the United States Code. Prior to working for HSI, I was certified as a Police Officer in Georgia, and I was employed with the Georgia Tech Police Department (GTPD) in Atlanta, Georgia. While working as a Police Officer, I conducted arrests, applied for arrest warrants, search warrants, court orders, and subpoenas.

2.    As a federal law enforcement officer, I have received formal training, as well as on-the-job training, in the investigation of narcotics trafficking. I have

Complaint - 3
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

participated in investigations involving controlled substances, drug smuggling, and other criminal activity. I have become familiar with methods and techniques used by narcotics manufacturers and distributors, persons in possession of narcotics for purposes of sales and transportation, and persons conspiring to transport and sell narcotics. I am also familiar with the methods employed by narcotics traffickers to conceal their trafficking activity and the origin of proceeds generated by this activity. I have also worked and consulted with numerous law enforcement officers experienced in narcotics and money laundering investigations.

3.    Because this complaint is submitted for the limited purpose of showing probable cause, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4.    This case was originally investigated by the Seattle Police Department and criminally charged in King County Superior Court. I did not work on the underlying investigation. The facts set forth in this Affidavit are based on information obtained from other individuals, including other law enforcement officers from the Seattle Police Department; review of documents and records related to this investigation to include reports and affidavits prepared by other law enforcement officers; communications with others who have personal knowledge of the investigation; and information gained through my training and experience.

## II.    SUMMARY OF PROBABLE CAUSE

5.    In the first quarter of 2025, Seattle Police Department (SPD) Detective Miller began a narcotics trafficking investigation into an organization ran by HERNANDEZ-VELASQUEZ. Investigators saw HERNANDEZ-VELASQUEZ selling narcotics in the King County Metropolitan area and used a confidential informant to make controlled purchases of drugs from HERNANDEZ-VELASQUEZ. The investigation revealed that HERNANDEZ-VELASQUEZ is a significant narcotics

Complaint - 4
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

trafficker in the Western District of Washington selling fentanyl, methamphetamine, and cocaine.

6.      During this investigation Detective Miller developed probable cause to arrest HERNANDEZ-VELASQUEZ on state charges, and a search warrant was issued for a residence located at 10765 14th Avenue SW, Apt G11, Seattle, Washington. Warrants were also issued for two vehicles. First, a grey 2020 Honda CRV bearing Washington license plate CMT3085 (Honda CRV), registered to N.H.V.  Although HERNANDEZ-VELASQUEZ is not the registered owner of the Honda CRV, he was observed using this vehicle during a controlled substance transaction. Second, a white 2017 BMW 320 bearing Washington license plate CPB8719 (BMW 320).  The BMW 320 was not registered to HERNANDEZ-VELASQUEZ, but was registered to S.D. HERNANDEZ-VELASQUEZ was observed using the BMW 320 vehicle for a controlled substance transaction and the title to the BMW 320 was found in HERNANDEZ-VELASQUEZ's room.

7.      When HERNANDEZ-VELASQUEZ was arrested on the state warrant, he was in a Lexus RX, Washington license plate CTT8812, (Lexus RX) registered to K.M.M.V. The Lexus RX was seized and stored in the Seattle Police Department's Vehicle Processing Room while an additional search warrant was secured. Searches of the Honda CRV and Lexus RX yielded a substantial amount of controlled substances and a firearm, discussed in more detail below.

**A. Sources of Information**

8.      In this investigation, Det. Miller worked with a confidential informant (CI). The CI provided reliable information regarding a variety of narcotics traffickers in the King County metropolitan area. The CI has no convictions. The CI is familiar with purchasing and selling of methamphetamine, heroin, and fentanyl based on his[1] own

---

[1] CI is being referred to as a male regardless of actual gender.

Complaint - 5
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

personal experience. To investigators' knowledge, the CI has never given false information, and the information he has provided to investigators has proven to be true, some examples of which are outlined herein. This CI lives in the community and therefore wishes to remain anonymous for fear of reprisals and retribution. The CI is not required to assist the government by providing information. The CI does have a drug related arrest and providing information to law enforcement in the hope of working off an arrest.

9. During a conversation between Det. Miller and the CI, the CI told Det. Miller that a man he knew only as "The Boss" (later identified as ORBIN HERNANDEZ-VELASQUEZ, and referred to hereafter by that name) was selling narcotics in King County. The CI said that HERNANDEZ-VELASQUEZ supplied drugs to street-level dealers operating in Seattle. The CI said that he had seen HERNANDEZ-VELASQUEZ with large amounts of drugs including fentanyl, methamphetamine, and crack cocaine. The CI said that HERNANDEZ-VELASQUEZ drove a newer grey Honda CRV. The CI believes HERNANDEZ-VELASQUEZ lives in Burien and travels with a female accomplice when selling drugs.

**B. Controlled Buy # 1**

10. On July 23, 2025, SPD detectives met the CI at a pre-determined meet location in King County. The CI and their property were searched for narcotics, paraphernalia, currency, and weapons with nothing found. Det. Miller directed the CI to make contact to purchase narcotics. The CI placed an order for two ounces of fentanyl for $1200 and was directed to a meet location within King County. Det. Miller witnessed this conversation take place and provided the CI with the buy money with recorded serial numbers for the transaction. The meet location is known to investigators but is not being divulged to protect the CI's identity. Surveillance was established at this meet location by detectives. The CI was then followed to the meet location by detectives. During this travel, the CI did not make any stops while traveling to the predetermined meet location.

Complaint - 6
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Once at the meet location, detectives observed the Honda CRV arriving at the meet location. This is consistent with the information the CI gave to detectives regarding the vehicle HERNANDEZ-VELASQUEZ drives. Detectives observed the CI walk to this same vehicle and enter. A female coconspirator, S.A.M., was also present and temporarily exited the vehicle.  The CI was in the vehicle for a short period of time and then departed from the predetermined meet location. A surveillance photo was taken of HERNANDEZ-VELASQUEZ during the deal with the CI.

11.    Det. Miller directed the CI to a post meeting location where he immediately turned over the suspected narcotics. The CI was under constant visual observation during the operation and the CI did not meet or interact with anyone other than the occupant(s) of the Honda CRV. The CI said that the "Boss" was driving the Honda CRV and turned over suspected fentanyl that he said he purchased from the "Boss." The substance appeared to be fentanyl and gross weight was approximately two ounces.  The weight was consistent with the amount the CI had been instructed to buy. The CI was searched for additional narcotics, currency, and weapons finding none. The CI stated that they also spoke about and agreed to a future narcotics transaction. Det. Miller field tested the suspected narcotics and received a positive presumptive test for fentanyl. The purchased narcotics were then entered into SPD evidence.

12.    Detectives followed the Honda CRV to the City of Burien. The Honda CRV stopped for a considerable amount of time in the l0700 BLK of 14th Avenue South near an apartment complex. HERNANDEZ-VELASQUEZ was observed exiting the vehicle and later reentering. A surveillance photo was taken was of HERNANDEZ-VELASQUEZ near the apartment complex. Surveillance continued with the Honda CRV until it was later lost in traffic near the 10700 Block of 14th Avenue South. The operation was concluded at this time and surveillance was terminated.

13.    Investigators know that narcotics traffickers often fail to list updated or accurate addresses, vehicle registrations, driver's license, or other standard methods of

Complaint - 7
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

current information with the government to thwart investigations into their criminal enterprise. In this case, the Honda CRV is registered to N.H.V, in the city of Lynnwood. Det. Miller utilized another law enforcement database and located multiple license plate scans for the Honda CRV in the 10700 block of 14th Avenue S. This is the same location where surveillance observed HERNANDEZ-VELASQUEZ parking after the controlled buy.

14. Detective Miller compared the surveillance photo with the driver's license photo of the registered owner for the Honda CRV.  Initially, Detective Miller believed that N.H.V. was the same person in the surveillance photo due to some similarities.  The driver's license photo of N.H.V. was shown to the CI, who stated that the person in the photo was not the "Boss" who had sold him the fentanyl.

15. Surveillance was established 10763 14th Ave SW (the Avenues Apartments). Det. Spaulding observed HERNANDEZ-VELASQUEZ and a female co-conspirator, S.A.M., exit the G building and enter the white BMW 320. Surveillance detectives followed this vehicle from the residence and observed HERNANDEZ-VELASQUEZ park at the 76 Gas Station at 12660 1st Avenue South, Seattle, WA. Officers saw a suspected customer approach the BMW 320 with money in his right hand. The customer entered the white BMW 320 for a short time before exiting. Det. Spaulding saw that the customer was carrying plastic baggies with white powdery substance inside consistent with cocaine or fentanyl. From my training and experience, this interaction appears to be a sale of narcotics and is consistent with countless narcotics transactions Det. Miller observed while working as a detective in the Narcotics section, and is also consistent with the first controlled buy. Once this customer left the vehicle, HERNANDEZ-VELASQUEZ drove off and was followed by surveillance to the predetermined meet location. Officers saw the CI enter the BMW 320 and then quickly exit.

Complaint - 8
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

16.    Det. Miller directed the CI to a post meeting location where they immediately turned over suspected narcotics consistent with the requested amount. The CI was under constant visual observation during the operation and the CI did not meet or interact with anyone other than HERNANDEZ-VELASQUEZ and the BMW 320. The CI turned over suspected fentanyl given to them by HERNANDEZ-VELASQUEZ. The substance the CI turned over was consistent in appearance with the drug ordered by the CI. The CI was searched for additional narcotics, currency, and weapons finding none. The CI stated they provided the buy money to HERNANDEZ-VELASQUEZ in exchange for narcotics. The CI stated that they also spoke about and agreed to a future narcotics transaction. Detective Miller field tested the suspected narcotics and received a positive presumptive test for fentanyl.  Gross weight was approximately two ounces and the purchase price was $1,200. The purchased narcotics were then entered into SPD evidence. The CI stated the bulk of the narcotics in this vehicle came from a backpack near HERNANDEZ-VELASQUEZ.

**C. Follow-up Investigation**

17.    After the second controlled buy, Det. Miller performed more comprehensive research of the license plates for the Honda CRV and the BMW 320. Using a law enforcement database, Det. Miller ran the name of the registered owner of the Honda CRV.  He located a report detailing a traffic stop involving a vehicle that is registered to the same owner as the Honda CRV. HERNANDEZ-VELASQUEZ was the driver of that vehicle and was found to have a warrant for three counts of narcotics violations from the Seattle Police Department. He was subsequently booked into King County Jail and later convicted of three counts of narcotics conspiracy. Det. Miller obtained a King County Jail booking photo without markings and showed this to the CI. The CI stated HERNANDEZ-VELASQUEZ is the person they know as "The Boss." Detective Miller also believed that the photo appeared to be the same individual being surveilled in this investigation.

Complaint - 9
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18.    HERNANDEZ-VELASQUEZ's coconspirator, S.A.M. is also known by investigators. Det. Spaulding positively identified this co-conspirator as S.A.M. Det. Spaulding is familiar with S.A.M. from a prior narcotics investigation. Det. Miller conducted research into S.A.M. and located multiple arrests for drug offenses including possession of fentanyl.

19.    During surveillance of HERNANDEZ-VELASQUEZ, customers are observed entering the rear passenger seats and HERNANDEZ-VELASQUEZ is often in the front passenger seat while S.A.M. drives. Investigators believe that S.A.M. and HERNANDEZ-VELASQUEZ are co-conspirators.

**D. Hernandez-Velasquez's Criminal History**

20.    HERNANDEZ-VELASQUEZ's criminal history rap sheet shows narcotics arrests in Washington, California, and Utah. HERNANDEZ-VELASQUEZ possessed a dangerous weapon during one of his arrests.  HERNANDEZ-VELASQUEZ was arrested in California on August 15, 2023, and was later convicted of transportation/sale of narcotics/controlled substances and was sentenced to 490 days of imprisonment.  On July 24, 2024, HERNANDEZ-VELASQUEZ was arrested in Washington for multiple felony narcotic offenses.  On March 12, 2025, he was convicted of three felony counts of manufacturing or trafficking in controlled substances.

**E. Controlled Buy # 3**

21.    On August 18, 2025, SPD detectives met the CI at a pre-determined meet location in King County. Prior to that date, HERNANDEZ-VELASQUEZ and S.A.M. were observed using a stairwell of apartment building G at 10765 14th Avenue SW. However, on August 18, 2025, HERNANDEZ-VELASQUEZ and S.A.M. were observed exiting apartment G11, on their way to meet with the CI.  HERNANDEZ-VELASQUEZ was carrying a bag and went to the Honda CRV.

22.    On August 18, 2025, SPD detectives met the CI at a pre-determined meet location in King County.  The CI and their property were searched for narcotics,

Complaint - 10
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

paraphernalia, currency, and weapons with nothing found. Det. Miller directed the CI to contact HERNANDEZ-VELASQUEZ to purchase narcotics. The CI placed an order for fentanyl and was directed to a meet location within King County. Det. Miller witnessed this conversation take place and provided the CI with the requisite prerecorded buy money for the transaction.

23.     Surveillance was established at 412 NE 165 Street in Shoreline.  Detectives observed HERNANDEZ-VELASQUEZ and S.A.M. arriving at this location. The CI was then directed to the meet location by HERNANDEZ-VELASQUEZ and the two conducted a hand-to-hand exchange outside of the vehicle before parting ways.

24.     Det. Miller directed the CI to a post meeting location where he immediately turned over suspected narcotics consistent with the requested amount. The CI was under constant visual observation during the operation, and the CI did not meet or interact with anyone other than HERNANDEZ-VELASQUEZ. The CI turned over suspected fentanyl given to them by HERNANDEZ-VELASQUEZ. The substance the CI turned over was consistent in appearance with the drugs ordered by the CI. The CI was searched for additional narcotics, currency, and weapons finding none. The CI stated they provided the buy money to HERNANDEZ-VELASQUEZ in exchange for narcotics. Detective Miller field tested the suspected narcotics and received a positive presumptive test for fentanyl. The amount of narcotics purchased was approximately 2 ounces gross weight. The purchased narcotics were then entered into SPD evidence.

25.     HERNANDEZ-VELASQUEZ and S.A.M. were then followed from the meet location to their residence at 10765 14 Ave SW. They were observed at the stairwell of the G building and walking up towards apartment G11. The operation was concluded at this time and surveillance was terminated.

**F. Surveillance**

26.     Within the month of August 2025, electronic tracking showed Hernandez-Velasquez traveled to the Washington/Oregon Border. This was outside of his pattern of

Complaint - 11
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

life and, in investigators' experience, narcotics traffickers will travel to great distances to resupply with narcotics. Detectives then observed HERNANDEZ-VELASQUEZ arriving to 10765 14th Ave SW driving the Honda CRV and entering the stairwell for apartment G11.

27.     Also, within the month of August 2025, Det. Miller observed HERNANDEZ-VELASQUEZ and S.A.M. in the parking lot of 412 NE 165th St., sitting in the white BMW. The two appeared to be waiting for someone to arrive as the vehicle was running and parked for an extended period of time. Det. Miller observed an unknown male (UM1) approach on foot with his wallet in his hands. UM1 reached into the wallet and handed the contents to HERNANDEZ-VELASQUEZ who was sitting in the front passenger seat. A short time later, UM1 reached into the parked vehicle and retrieved a small item, from the passenger side where HERNANDEZ-VELASQUEZ was sitting, which UM1 quickly concealed on his person. UM1 then departed the area and broke contact with HERNANDEZ-VELASQUEZ. Based on investigators' training and experience, investigators suspect this was a narcotics transaction. A short time later, a similar pattern was observed with another suspected customer. This suspected customer reached into their pocket and then gave an item to HERNANDEZ-VELASQUEZ. This suspect customer began to unzip their backpack as if to prepare to conceal an item before being interrupted by HERNANDEZ-VELASQUEZ who handed her a large plastic bag. This suspected customer then departed the area.

28.     On August 20, 2025, Det. Miller conducted surveillance at 412 NE 165th St. Det. Miller observed HERNANDEZ-VELASQUEZ arriving in the white BMW 320 driven by S.A.M. Det. Miller observed both exiting the vehicle and walk to an alcove. Det. Miller observed HERNANDEZ-VELASQUEZ examining the downspout on a nearby building to this alcove. Det. Miller observed HERNANDEZ-VELASQUEZ tucking something behind the downspout as if to hide it from view. After doing this, HERNANDEZ-VELASQUEZ left the area with S.A.M. in the white BMW 320. SPD

Complaint - 12
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Det. Lazarou and Det. Miller walked to the area and examined the downspout. Det. Miller looked at the same downspout where he had observed HERNANDEZ-VELASQUEZ's hand. Det. Miller observed behind the downspout there was a cellophane wrapping; Det. Miller removed the cellophane wrapping and observed a small hard chunk of white powder consistent with either fentanyl or cocaine. This downspout was approximately 70 inches above the ground and this suspected narcotic was recovered from the scene by Det. Miller and witnessed by Det. Lazarou. This was not photographed in place as the customer's arrival time was unknown and this location has many suspected customers of HERNANDEZ-VELASQUEZ in the adjacent buildings. The suspected fentanyl was recovered from the scene and transported to SPD evidence. Det. Spaulding field tested the substance and received a positive presumptive test for the present of fentanyl. The weight was recorded as 2.5 grams, a common street level drug trafficking weight.

29.    Investigators recognize this behavior as a "Dead Drop" delivery of narcotics. On prior surveillance, typically the only people that Det. Miller has observed walking to this alcove area are HERNANDEZ-VELASQUEZ and S.A.M. They were previously presumed to have been only urinating in this corner until this surveillance and subsequent recovery of fentanyl.

30.    Approximately 30 minutes after HERNANDEZ-VELASQUEZ departed, Det. Miller observed a vehicle arriving and let out a passenger. This male walked to the area of the downspout and appeared to not have located the fentanyl that HERNANDEZ-VELASQUEZ had left for him. He then searched under and around both of the dumpsters in this area for approximately 15 minutes. After not locating the fentanyl, the unknown person departed the area.

31.    During the investigation, the Honda CRV was generally parked at the street along 10765 14th Avenue SW location. Only HERNANDEZ-VELASQUEZ and S.A.M. were observed accessing or utilizing the Honda CRV.

Complaint - 13
*United States v. Hernandez-Velasquez* / USAO No. 2025R01136

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**G. Search Warrant of Residence, Honda CRV, and BMW 320**

32.     Based on Det. Miller's investigation, with the real-time cellular location data as well as physical surveillance, Det. Miller determined that HERNANDEZ-VELASQUEZ resided at 10765 14th Ave., SW, Apt G11. A state search warrant was issued for the residence, the Honda CRV, and the BMW 320.

33.     On August 26, 2025, Det. Miller and other officers set up surveillance on HERNANDEZ-VELASQUEZ's residence and a suspected stash house location located at 412 NE 165th St. HERNANDEZ-VELASQUEZ was observed arriving in the parking lot of 412 NE 165th St. driving the Lexus RX. Surveillance detectives observed HERNANDEZ-VELASQUEZ drop-off S.A.M. at the location and then he departed the area. HERNANDEZ-VELASQUEZ was later observed arriving at 10765 14th Ave. SW. He parked the Lexus RX on 14th Ave., SW and entered apartment G11.

34.     Surveillance detectives later observed HERNANDEZ-VELASQUEZ exiting the stairwell for apartment G11 and walking to the Honda CRV parked nearby. He was observed opening the doors of the Honda CRV and the rear hatch area before entering the Lexus RX. At this time arrest teams were signaled in to detain HERNANDEZ-VELASQUEZ. HERNANDEZ-VELASQUEZ was arrested in the driver's seat of the Lexus RX. A search (incident to arrest) was conducted by SPD Officer Martinez of HERNANDEZ-VELASQUEZ's person and recovered 5.5 grams of suspected fentanyl and $2,338 from HERNANDEZ-VELASQUEZ's front left shorts pocket.  A field test for the fentanyl was positive.

35.     SPD Detectives conducted a search of 10765 14th Ave., SW Apt G11. This is a two-bedroom apartment.  A female roommate of HERNANDEZ-VELASQUEZ and the her children occupied one bedroom.  According to the roommate, HERNANDEZ-VELASQUEZ had the other bedroom.  In that bedroom, Det. Lazarou located the following inside a suitcase next to the bed: a black bag containing $17,861, a plastic

shopping bag containing $11,941, and the title to the BMW 320 sedan used by HERNANDEZ-VELASQUEZ in a controlled delivery.

36.     SPD Detectives conducted a search of the Honda CRV and located the following: (a) 103 grams of fentanyl from the driver side door panel, (b) 971.8 grams of methamphetamine from under the front passenger seat, (c) 218.9 grams of fentanyl, 20.8 grams of cocaine, and 18.7 grams of methamphetamine from a red backpack in the trunk area, (d) 535.4 grams of fentanyl and 25.6 grams of an unknown substance in a white bag in the trunk area, and (e) 6.7 grams of fentanyl and 15.6 grams of an unknown substance in a black bag in the trunk area. The substances later field tested positive. Detectives also found an ACP Philippines 1911 pattern handgun in a separate black bag in the trunk. There was no round in the chamber, however a loaded magazine was inserted into the pistol.

37.     The BMW 320 was no longer parked at 10765 14th Avenue SW on August 18, 2025.  It was parked at a different apartment complex.  A search of the BMW 320 uncovered drug paraphernalia but no drugs.

**H. Search of the Lexus RX**

38.     On September 3, 2025, a search warrant was issued for the Lexus RX used by HERNANDEZ-VELASQUEZ as the time of his arrest. The vehicle was towed and stored at the SPD evidence garage prior to the search.  The following narcotics were recovered from the Lexus RX by Detective Miller and Detective Spaulding: 1,658.9 grams Fentanyl, 198.1 grams Cocaine, 160.4 grams Crack Cocaine, 229.3 grams Methamphetamine. These narcotics field tested positive.  Additional items were found including: three digital scales, two cellular phones, and a Honduras passport with HERNANDEZ-VELASQUEZ's name. During the search the Honduras passport was located in one of two bags found behind the center console. Both bags contained a substantial amount of narcotics. Det. Miller also located a small bag of Mannitol in the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

glove box. Mannitol, in investigators' experience, is a common cutting agent for narcotics traffickers dilute their product and boost the quantity they can sell.

### III.    CONCLUSION

Based on the above facts, I respectfully submit that there is probable cause to believe that HERNANDEZ-VELASQUEZ committed the offenses set forth in Counts 1 through 2, above.

_____

Igor Leao, Complainant
Special Agent, Homeland Security
Investigations

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 18th day of December, 2025.

_____

S. KATE VAUGHAN
United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970